**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**GERALD LUTES,**

　　　　**Petitioner,**

　　　　　　　　　　　　　　　　　　　**Civil Action No.**
　　　　**v.**　　　　　　　　　　　　　**9:02-CV-1043 (TJM/DEP)**

**T. L. RICKS,**

　　　　**Respondent.**

_____

**APPEARANCES:**　　　_____**OF COUNSEL:**

**FOR THE PETITIONER:**

GERALD LUTES
Petitioner, _pro se_
98-A-4481
Clinton Correctional Facility Annex
P.O. Box 2002
Dannemora, NY 12929-2002

**FOR THE RESPONDENT:**

HON. ELIOT SPITZER　　　　DOUGLAS J. GOGLIA, ESQ.
Office of Attorney General　　Assistant Attorney General
New York State Attorney General
The Capitol
Albany, NY 12224

**THOMAS J. MCAVOY**
**SENIOR UNITED STATES DISTRICT JUDGE**

**MEMORANDUM-DECISION and ORDER**

Petitioner Gerald Lutes, a New York State prison inmate as a result of a conviction in 1998 of second degree manslaughter, has commenced this proceeding seeking habeas relief pursuant to 28 U.S.C. § 2254.  In support of his request for federal habeas intervention, petitioner asserts numerous grounds, some of which have been presented to and rejected by the state courts on direct appeal of his conviction and others which he has asserted for the first time in this federal habeas proceeding.  After reviewing the file herein together with the state court records, the Court find that Lutes is procedurally barred from obtaining habeas relief as to the claims he raises for the first time in this action.  Additionally, applying the requisite deferential standard to the remaining grounds raised in Lutes' petition in light of the state courts' rulings, this Court denies and dismisses his habeas petition.

## I.   <u>BACKGROUND</u>

According to the testimony adduced at trial, in the afternoon of July 16, 1997, Michael Ferriere had placed some of his personal effects including a suitcase containing his clothing in a cabana near a pond in Greene County, New York and proceeded to go swimming.  *See* Transcript of Trial of Gerald Lutes (5/5/98) ("Trial Tr.") at pp. 714-16.  When Ferriere

2

eventually returned to the cabana to change his clothing, he discovered

that his suitcase was not where he had placed it.  Trial Tr. at p. 716.

Believing that he may have been the victim of a prank of some friends who

were having a cook-out at the nearby home of petitioner, *pro se* Gerald

Lutes, Ferriere went to Lutes' home in the hopes of finding his suitcase.

Trial Tr. at pp. 716-17.  Upon arriving at that location, Ferriere asked the

guests at Lutes' home, including Kenneth Strickland, whether any of them

had taken Ferriere's suitcase.  Trial Tr. at pp. 717-18.  Although all of the

individuals denied having taken the suitcase, Ferriere believed that

Strickland had removed it from the cabana and the two soon engaged in a

"heated discussion" regarding the issue.  Trial Tr. at pp. 718-19.  The men

then exchanged blows, and soon thereafter Steven Lutes and Daniel J.

Dilmore joined the fight by hitting Strickland.  Trial Tr. at pp. 719-20, 724.

However, petitioner and an acquaintance, Richard Clifford, succeeded in

stopping that fight.  Trial Tr. at p. 720.  When Strickland went inside

petitioner's home after the altercation, Gerald Lutes noticed that one of

Strickland's teeth appeared to have been knocked out and another tooth

was broken.  Trial Tr. at pp. 1837-38.  He also observed blood coming out

of Strickland's mouth and running down his neck and jaw.  Trial Tr. at p.

3

1838.  Petitioner then led Strickland out of the house and directed him to go to the home of petitioner's father.  Trial Tr. at pp. 722, 1838-39.  Steven Lutes and Dilmore subsequently stated that they intended to go to petitioner's father's house, after which Gerald Lutes expressed his intent to accompany them "to make sure they didn't get into any further trouble." Trial Tr. at p. 1840.

Rose Marie Lutes, the mother of Gerald and Steven Lutes, testified that at approximately 10:00 on the evening of July 16, 1997, she heard a car arrive at her house and soon thereafter heard her sons and Dilmore yelling at Strickland on her porch and fighting with him.[1]  Trial Tr. at pp. 962-64.  Rose Marie Lutes eventually left her bedroom and went onto her porch, where she observed petitioner, Steven Lutes and Dilmore "pulling on" Strickland, whose face at the time was "full of blood."  Trial Tr. at p. 965.  When she asked the men what had precipitated the fight, petitioner responded that Strickland had "ripped Michael [Ferriere] off."  Trial Tr. at p. 967.  She then observed the three kicking and punching Strickland.  Trial Tr. at pp. 967-71.  The fighting continued, and at one point Rose Marie Lutes saw Gerald Lutes hit Strickland in the head with a rake.  Trial Tr. at

---

[1]     The car the men drove that evening apparently belonged to Dilmore's girlfriend.  Trial Tr. at p. 893.

4

pp. 971-78.  After Rose Marie Lutes informed the men that she had called

the New York State police and advised the authorities about the fight,

petitioner urged his brother and Dilmore to "get [Strickland] out of here."

Trial Tr. at pp. 981-82.  The three then placed Strickland in the car and

drove away.[2]  Trial Tr. at pp. 982, 1967.

In his statement to law enforcement agents,[3] Gerald Lutes stated that

once Strickland was in the car, the group drove for a period of time until

they reached a body of water that petitioner referred to as Stardust Pond.

Trial Tr. at p. 1967.  According to petitioner, Steven Lutes then said:

"That's it, stop the car, you're going swimming."  *Id.*  Dilmore, who was

driving the vehicle, stopped the car, and then he, petitioner and Steven

Lutes removed Strickland from the automobile and threw him over a bridge

into the pond.  Trial Tr. at pp. 1967-68.

In the early evening of July 17, 1997, Orland Perkins, Sr. left his

home in Coxsackie, New York to go fishing with his son and his son's

friend, Anthony Kardum.  Trial Tr. at p. 656.  The three were fishing off a

---

[2]      At the time, Strickland was not moving or talking.  Trial Tr. at p. 982.

[3]      This Court finds that the trial court properly allowed Lutes'
incriminating statement to the police to be admitted into evidence against Lutes at
his trial.  The Court additionally finds that the taking of that statement and its
subsequent admission into evidence was entirely consistent with the legal precepts
announced in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

nearby bridge for approximately ten minutes when Kardum called to Perkins and requested that he look down to the water below.  Trial Tr. at p. 657.  Upon looking over the bridge, Perkins observed a man lying face down in shallow water.  Trial Tr. at p. 658.  A subsequent autopsy of the body, which proved to be that of Strickland, revealed that he had sustained numerous blunt force injuries to his head, arms, legs, chest, abdomen and back.  Trial Tr. at p. 1071.  Additionally, Dr. Barbara Wolf, who performed the autopsy on Strickland, testified that both of his eyes were black and blue and that Strickland had sustained multiple lacerations to his lips and two broken teeth.  Trial Tr. at p. 1071-73.  Additionally, Strickland's liver was lacerated in two areas, with one such laceration "almost chopp[ing] the right side of the liver in half."  Trial Tr. at p. 1075.  Dr. Wolf testified that although the injury to the liver would likely have proven fatal, Strickland's death was the result of his drowning.  Trial Tr. at pp. 1076-78.

## II.   **PROCEDURAL HISTORY**

### A.   State Court Proceedings

As a result of their participation in the death of Strickland, on July 30, 1997, Gerald Lutes, Steven Lutes and Daniel Dilmore were indicted by a Greene County grand jury and charged with one count of second degree

murder.  *See* Indictment No. C97-076L (reproduced in Record on Appeal ("Record") at p. R3).

Lutes was thereafter jointly tried with Dilmore[4] in connection with these charges before a jury in Greene County Court beginning on May 8, 1998, with Greene County Court Judge Daniel K. Lalor presiding.  At the conclusion of that trial, Lutes was acquitted of the second degree murder charge but found guilty of the lesser included offense of second degree manslaughter.  Trial Tr. at pp. 2168-70.  As a result of the jury's verdict, petitioner was sentenced by Judge Lalor on June 19, 1998 to an indeterminate term of five to fifteen years of imprisonment.  Record at p. R87.

Lutes appealed his conviction and sentence to the New York State Supreme Court, Appellate Division, Third Department.  With the assistance of counsel, Lutes argued in his appeal that:  1) the conviction was based on insufficient evidence and was against the weight of the evidence; 2) the prosecution's failure to timely submit evidence obtained at the crime scene for forensic testing constituted a violation of Lutes' right to all *Brady*

---

[4]      As will be seen, prior to Lutes' trial, his brother, Steven, pleaded guilty to first degree manslaughter arising out of the death of Strickland.

7

material[5] to which he was entitled; 3) the trial court erred in allowing a

prosecution witness to offer hearsay testimony regarding deoxyribonucleic

acid ("DNA") profiling analysis that had been conducted on blood evidence;

4) a prosecution witness offered improper testimony which was so unduly

prejudicial as to require reversal of Lutes' conviction; and 5) the sentence

imposed on Lutes was harsh and excessive.  *See* Brief in Support of

Appeal (12/28/00) ("App. Br.") at pp. 5-18.

The Third Department rejected each of Lutes' contentions and

affirmed his conviction and sentence.  *See People v. Lutes*, 285 A.D.2d

739, 728 N.Y.S.2d 554 (3d Dept. 2001).  On October 12, 2001, the Court

of Appeals denied Lutes leave to appeal the Third Department's decision.

*People v. Lutes*, 97 N.Y.2d 642, 735 N.Y.S.2d 499 (2001).  According to

petitioner, he has not filed any collateral challenges to his conviction in the

state courts.  *See* Petition (Dkt. No. 1) at ¶ 10.

B.   This Proceeding

Petitioner commenced this action on August 12, 2002.  Petition at p.

1.  In his petition,[6] Lutes claims that:  1) there was insufficient evidence

---

[5]     *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

[6]     As will be seen, a number of the grounds asserted by Lutes in his
petition are legally redundant, or allege different theories in support of a common

8

adduced at trial to establish his guilt; 2) his conviction was against the weight of the evidence; 3) the sentence imposed on him was unduly harsh and excessive; 4) the prosecution engaged in several acts of misconduct during the course of Lutes' trial; 5) the trial court committed numerous errors during the criminal proceedings below; 6) the transcript of the trial is incomplete; 7) the prosecution failed to timely provide Lutes with all *Brady* material; 8) a criminal investigator who testified at trial for the prosecution offered improper, prejudicial testimony; 9) Lutes' mother offered false testimony at petitioner's trial; 10) petitioner received the ineffective assistance of trial counsel; 11) the statement Lutes provided to law enforcement agents was obtained in violation of his *Miranda* rights;[7] 12) petitioner was denied counsel during a portion of the criminal proceedings below; and 13) the trial court's denial of defense counsel's motion to change the venue of the trial and for severance constituted error. *See* Petition at ¶ 11.

---

ground. For example, grounds B, D, and F all allege prosecutorial misconduct, while grounds B, C, D, F, and H all allege that the trial court committed reversible error during the criminal proceeding below. After having reviewed the submissions filed in this action, the Court has found it appropriate to address the claims raised by petitioner by reference to the legal theories asserted by Lutes, rather than by the ground in the petition in which he raises his arguments.

[7]       *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

9

The New York State Attorney General, acting on respondent's behalf, has opposed the granting of Lutes' petition by filing an answer and a memorandum of law in opposition to petitioner's application.  *See* Dkt. Nos. 9, 10.  In his opposition papers, the respondent argues that because Lutes has filed a petition containing both exhausted and unexhausted claims, the petition should be dismissed in its entirety.  *See* Respondent's Memorandum in Opposition to the Petition (Dkt. No. 10) ("Resp. Mem.") at pp. 5-6.  Respondent additionally argues that all of the claims Lutes previously asserted in the state courts which he now raises in this proceeding are without merit.  *Id*. at pp. 6-16.

## III.   **DISCUSSION**

A.   Exhaustion Requirement Governing Federal Habeas Petitions

_____It is well settled that a federal district court "may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State.'"  *Shabazz v. Artuz*, 336 F.3d 154,160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (other citation omitted)); *see also Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This is because "'[s]tate courts, like federal courts, are obliged to enforce federal law.'"  *Galdamez v. Keane*, 394 F.3d

10

68, 72 (2d Cir.) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119

S.Ct. 1728, 1732 (1999)), *cert denied sub nom.*, *Galdamez v. Fischer*, ___

U.S. ___, 125 S.Ct. 1996 (2005).  As the Supreme Court noted in

*O'Sullivan,* "[c]omity ... dictates that when a prisoner alleges that his

continued confinement for a state court conviction violates federal law, the

state courts should have the first opportunity to review this claim and

provide any necessary relief."  *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. at

1732 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (quoting

*O'Sullivan*).[8]

Additionally, in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198 (1982),

the Supreme Court held that federal district courts are required to dismiss

"mixed" federal habeas petitions, i.e., petitions containing both exhausted

and unexhausted claims, without prejudice and afford petitioners the

opportunity to return to state court to present any unexhausted claims

raised in the federal petition to the state court for its consideration.  *Rose*,

455 U.S. at 522, 102 S.Ct. at 1205.

---

[8]     This exhaustion requirement "reduces friction between the state and
federal court systems by avoiding the unseemliness of a federal district court's
overturning a state court conviction without the state courts having had an
opportunity to correct the constitutional violation in the first instance."  *O'Sullivan*
526 U.S. at 845, 119 S.Ct. at 1732; *see also Galdamez*, 394 F.3d at 72 (citing
*O'Sullivan*).

Respondent argues that numerous claims raised by Lutes in his petition are unexhausted. *See* Resp. Mem. at pp. 5-6. Respondent further contends that because Lutes could have asserted his unexhausted claims in either his direct appeal or a motion to vacate his judgment of conviction filed by him pursuant to Section 440.10 of New York's Criminal Procedure Law ("CPL"), "petitioner has indisputably failed to exhaust available state remedies" with respect to those claims. Resp. Mem. at p. 6. Respondent contends that because Lutes has failed to utilize "all available mechanisms to secure review" of his unexhausted claims, this Court must dismiss Lutes' mixed petition. *Id.*

### 1.   Deeming Federal Habeas Claims Exhausted

In *McKethan v. Mantello*, 292 F.3d 119 (2d Cir. 2002), the Second Circuit, while acknowledging *Rose*'s total exhaustion rule, noted that a claim that has never been presented to the state courts may nevertheless be "deemed" exhausted by a federal court where the unexhausted claim, if asserted in the state courts, would be denied by the state court as procedurally barred. *McKethan*, 292 F.3d at 122. Specifically, the *McKethan* court determined that claims that are "lost through procedural default are ... exhausted" for purposes of federal habeas review. *Id.*; *see*

*also Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) ("for exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred") (internal quotations and citations omitted); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("if the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted"), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436 (1995); *accord Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1059 (1989) ("[i]t would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined"). Thus, a habeas petition which only contains claims that have either been previously asserted by the petitioner in the state courts or which may be deemed exhausted by a federal court is not a "mixed" petition subject to dismissal under *Rose*.  *E.g. Chisolm v. Costello*, No. 94CIV.3201, 1998 WL 167332, at *4 (S.D.N.Y. Apr. 8, 1998) ("[w]hile *Rose* would traditionally require the dismissal of a mixed petition due to the failure to exhaust some of the claims, here, the unexhausted claims are deemed exhausted....  The petition is thus no longer mixed in the *Rose* sense of the term").

This Court must therefore determine whether it may now properly deem exhausted the claims Lutes has raised for the first time in his federal habeas petition.

### 2. Review of Lutes' Unexhausted Claims

Based upon the Court's review of the appellate brief filed on Lutes' behalf in conjunction with his direct appeal,[9] it is apparent that petitioner has never asserted in the state courts many of the claims for which he now seeks federal habeas relief.  Specifically, he has never alleged in the state courts that the trial court record was incomplete.  *E.g.*, Petition, Grounds B(4) and F(4).  Nor has petitioner asserted in the state courts any of the claims raised in Ground D, which are rooted in Lutes' claim that his constitutional rights were violated when his mother was improperly permitted to offer testimony at his trial that was damaging to petitioner's defense to the murder charge.  *See* Petition, Ground D.  Additionally, Lutes concedes, and this Court's review of the appellate brief filed on behalf of petitioner confirms, that he has never asserted in the state courts any of

---

[9]      As noted above, petitioner has not filed any collateral challenges to his conviction in the state courts. *See* Petition at ¶ 10.

the claims he now raises in Grounds F, G and H[10] of his federal habeas petition.

When claims have never been presented to a state court, a federal court may find that there is an "absence of available state corrective process" under § 2254(b) "if it is clear that the unexhausted claim[s] [are] procedurally barred by state law and, as such, [their] presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S.Ct. 1404 (2001); *McKethan*, 292 F.3d at 122.

Lutes is plainly foreclosed from filing a second appeal with the Third Department in order to advance any of the above claims since a defendant

---

[10]     Petitioner has incorrectly labeled the ground in his petition following Ground "G" as Ground "F."  *See* Petition at (unnumbered) p. 5. The ground that Lutes asserted prior to Ground "G" in his petition is also labeled by Lutes as Ground "F."  *See* Petition at (unnumbered) p. 4. This Court therefore assumes that the label petitioner has attributed to the ground following ground "G" is a typographical error, and will accordingly refer to that ground, which refers to publicity which Lutes claims surrounded his criminal trial and pretrial motions which were filed on Lutes' behalf, as Ground "H."

is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91. Moreover, careful review of the unexhausted claims asserted by Lutes in his habeas petition reveals that all such claims are based upon facts apparent from the state court record which could have been asserted by him in his direct appeal.

For example, his claims that the trial transcript failed to contain references to improper conduct that occurred during the course of his trial (*see* Petition at Grounds B(4), D(4) and F(4)) is necessarily one that could have been asserted by Lutes in his direct appeal. *E.g.*, *People v. Jacobs*, 286 A.D.2d 404, 405, 729 N.Y.S.2d 189, 190 (2d Dept. 2001) (summary reversal of judgment of conviction granted where appellant established trial record was incomplete) (citing *People v. Rivera*, 39 N.Y.2d 519, 384 N.Y.S.2d 726 (1976)) (other citations omitted); *Benitez v. Henderson*, No. CV 89-0015, 1990 WL 148756, at *2 (E.D.N.Y. Sept. 25, 1990) (noting that Appellate Division may order reconstruction hearing where portions of criminal transcript are missing) (citation omitted).

Next, the Court notes that the claims raised in petitioner's unexhausted fourth ground for relief are based upon the trial testimony of Lutes' mother. *See* Petition, Ground D. Specifically, petitioner's claims

that Rose Marie Lutes provided false testimony that was elicited by the

prosecution and thereafter improperly allowed into evidence are

necessarily based upon matters contained in the record.  *See* Petition,

Grounds D(1), (2) and (3).  Additionally, Lutes' claim that his mother's

testimony was based in part upon a plea agreement entered into between

the prosecution and Steven Lutes (Petition, Ground D, "Supporting Facts")

was also a matter that could have been raised by Lutes in his direct

appeal.  In this regard, the Court notes that although the state court record

does not establish that petitioner was provided a copy of the plea

agreement into which the District Attorney and Steven Lutes entered, the

"Inmate Information Database" provided on the Internet by the New York

Department of Correctional Services indicates that Steven Lutes began

serving his sentence for first degree manslaughter arising out of his

involvement in Strickland's death on May 12, 1998.[11]  *See*

http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130.  Thus,

Steven Lutes necessarily entered into that plea agreement prior to the

close of the prosecution's case against Lutes, which was ongoing as of

May 14, 1998.  *See* Trial Tr. at pp. 1213, 1240.  Any claim relating to

---

[11]      This court's search of the Westlaw legal database failed to disclose
any appeal filed by Steven Lutes relating to that conviction.

Steven Lutes' plea agreement could therefore have readily been asserted by appellate counsel in his appellate brief, which was dated December 28, 2000.  *See* App. Br. at p. 29.

With respect to the claims raised in Ground F, which are based upon petitioner's argument that the prosecution was wrongfully permitted to recall one of its witnesses during the course of the criminal trial (*see* Petition at (unnumbered) pp. 4-5), it is clear that the factual basis for this claim was readily apparent from the record and could therefore have been raised by Lutes in his direct appeal.

Moreover, all of the legal theories raised by petitioner in Ground G of his petition concern matters that occurred prior to his trial.  Specifically, this ground alleges that:  i) Lutes' arrest was unlawful; ii) his confession was coerced and obtained in violation of his Fifth Amendment right against self-incrimination; and iii) he was denied his right to counsel while he was being questioned by law enforcement agents about Strickland's death.  *See* Petition, Ground G.  Since all of these theories were known to Lutes prior to the time his appeal was perfected, they necessarily could have been raised on appeal.

The final ground in Lutes' petition argues that the jury was exposed

18

to inflammatory publicity and that the trial court wrongfully denied defense

counsel's requests for a change of venue and to sever his trial from that of

co-defendant Dilmore.  *See* Petition, Ground H.  It is clear that both of

these theories could have been asserted in Lutes' direct appeal of his

conviction.

"New York does not otherwise permit collateral attacks on a

conviction when the defendant unjustifiably failed to raise the issue on

direct appeal."  *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10(2)(c)).[12]

Since Lutes is prohibited from properly raising any of the foregoing claims

in an Article 440 motion, all of his unexhausted federal habeas claims must

be both "deemed exhausted" and procedurally defaulted for purposes of

his habeas application.  *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*,

41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct.

---

[12]       CPL § 440.10 provides, in salient part:

                                    * * * * *

2.       [County Court] must deny a motion to vacate a judgment when:

                                    * * * * *

(c)       Although sufficient facts appear on the record of the
          proceedings underlying the judgment to have permitted, upon
          appeal from such judgment, adequate review of the ground or
          issue raised upon the motion, no such appellate review or
          determination occurred owing to the defendant's unjustifiable
          failure to ...  raise such ground or issue upon an appeal actually
          perfected by him.

1436 (1995); *McKethan*, 292 F.3d at 123; *Reyes*, 118 F.3d at 139; *Spence v. Superintendent Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at *10  (E.D.N.Y. Sept. 18, 2002).

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish *both* cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[13] *Dixon*, 293 F.3d at 80-81 (citing *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546 (1991)); *St. Helen v. Senkowski*, 374 F.3d 181,184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998)) (other citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649 (1986); *King v.*

---

[13]     A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.), *cert. denied*, 537 U.S. 955 (2002).

*Greiner*, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from

considering unexhausted claims "unless petitioner can establish cause to

excuse the default and prejudice, or actual innocence"); *Lora v. West*, No.

04Civ.1902, 2005 WL 372295, at \*9 (S.D.N.Y. Feb. 17, 2005) (citations

omitted); *Morales v. Sabourin*, No. 00 Civ. 8773, 2002 WL 32375006, at

\*11 (S.D.N.Y. Apr. 30, 2002).

To establish "cause," a petitioner must show that some objective

external factor impeded his or her ability to raise the unexhausted claims in

the state courts.  *Coleman*, 501 U.S. at 753, 111 S.Ct. at 2556; *Restrepo v.

Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, No. 00

CIV.7927, 2002 WL 922260, at \*3 (S.D.N.Y. May 7, 2002) ("[t]o show

'cause' for his failure to exhaust state remedies before bringing a habeas

claim, petitioner must show that some objective factor external to the

defense impeded his efforts to raise the claims in state court") (citing

*McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470 (1991)).

Examples of external factors include "interference by officials," ineffective

assistance of counsel, or that "the factual or legal basis for a claim was not

reasonably available" at trial or on direct appeal.  *Murray*, 477 U.S. at 488,

106 S.Ct. at 2645; *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir.

1993); *Key v. Artuz*, No. 99-CV-161, 2002 WL 31102627, at *9 (E.D.N.Y.

Sept. 16, 2002).

In this instance, in an apparent effort to establish cause for his

procedural default, Lutes declares that his unexhausted claims:

> were not presented for reasons that this case was
> treated as an appeal from start, on paperwork only
> was defense made.  These grounds were preserved
> on record and should be given serious review and
> additional arguement [*sic*].

Petition at (unnumbered) p. 4.

The precise meaning of the above language is unclear to this Court.

To the extent that Lutes may now be attempting to claim that his trial

and/or appellate counsel rendered ineffective assistance in an effort to

establish cause for his default, the Court notes that Lutes did not allege

that he received the ineffective assistance of trial counsel in his direct

appeal of his conviction,[14] or by way of a motion to vacate his conviction

brought pursuant to CPL § 440.10.  *E.g.*, Petition at ¶ 10.  Nor has

petitioner ever claimed in the state courts that he received the ineffective

assistance of appellate counsel through an application seeking a writ of

error *coram nobis* filed with the Appellate Division.  *Id.*

---

[14]     Lutes was represented at trial by both Richard L. Mott, Esq. and
Joseph H. Warren, Esq., and on appeal by Carl J. Silverstein, Esq.

22

"A petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred." *Reyes*, 118 F.3d at 140 (citation omitted); *see also Perez v. Greiner*, No. 02 CIV. 1436, 2003 WL 22427759, at *7 (S.D.N.Y. Oct. 23, 2003); *Zelaya v. Mantello*, 00CIV.0865, 2003 WL 22097510, at *5 (S.D.N.Y. Sept. 10, 2003); *Santiago v. McGinnis*, CIV.00-5870, 2002 WL 31946709, at *4 (E.D.N.Y. Oct. 21, 2002); *Carey v. Supt.*, 99-CV-0821, slip op. at 5 (N.D.N.Y. Sept. 29, 2003) (McAvoy, S.J.) (citing *Murray*).[15]  Since Lutes has never asserted in the state courts that he received the ineffective assistance of trial or appellate counsel, this Court may not now properly excuse his procedural default on the above-referenced claims based upon any claim that Lutes received the ineffective assistance of either trial or appellate counsel.

Since Lutes has not demonstrated any legally cognizable cause for his failure to exhaust the above claims, this Court need not decide whether he suffered actual prejudice because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and

---

[15]    Nor has petitioner demonstrated any cause for his failure to raise these ineffective assistance claims in the state courts. *E.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 1592 (2000).

prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Miller v. Bennett*, No. 98-CV-0661, 2004 WL 1573874, at *10 (W.D.N.Y. May 22, 2004) ("[s]ince petitioner cannot show cause for his procedural default, this court need not reach the question of whether he can show prejudice") (citing *Stepney*); *Jones v. Barkley*, No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb. 27, 2004) (Sharpe, D.J.) (collecting cases).  Moreover, as is discussed more fully below, there was sufficient evidence adduced at trial to conclusively establish petitioner's complicity in the death of Strickland.  This Court therefore denies the above-referenced claims as procedurally defaulted.

      B.    <u>Standard of Review for Claims Decided on the Merits</u>

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  A federal court cannot grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d

Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003);

*Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also

requires that in any such proceeding "a determination of a factual issue

made by a State court shall be presumed to be correct [and t]he applicant

shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403

F.3d at 66; *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal

quotations omitted).

The Second Circuit has provided additional guidance concerning

application of this test, noting that

[u]nder AEDPA, we ask three questions to
determine whether a federal court can grant habeas
relief: 1) Was the principle of Supreme Court case
law relied upon in the habeas petition "clearly
established" when the state court ruled? 2) If so,
was the state court's decision "contrary to" that
established Supreme Court precedent? 3) If not, did
the state court's decision constitute an
"unreasonable application" of that principle?

25

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power is premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Shriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

In *Sellan*, the Second Circuit answered the question of whether deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the federal claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan*, 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning

26

of § 2254(d)(1) dictates that:

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*"

*Sellan*, 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir. 2002).

When a state court's decision is found to be decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1523 (2000)*.*  Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *see also Sellan*, 261 F.3d at 315.  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not

27

be great[.]"  *Francis S.,* 221 F.3d at 111.

## C.    Review of Lutes' Exhausted Claims

### 1.    Insufficiency of Evidence

In his first ground for relief, Lutes argues that his conviction was "based upon insufficient evidence."  *See* Petition, Ground A.  Specifically, he argues that the proof adduced at trial failed to establish that his conduct relating to Strickland "did not rise to criminal recklessness as opposed to civil negligence."  *Id.*

### i.    Clearly Established Supreme Court Precedent

The Due Process Clause of the United States Constitution protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *See Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787 (1979); *Fiore v. White*, 531 U.S. 225, 228-29, 121 S.Ct. 712, 714 (2001).  In a challenge to the sufficiency of evidence presented at trial, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt."  *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478 (1984) (citing *Jackson*) (other citations omitted).  Since the

28

*Jackson* standard is clearly established federal law as determined by the

Supreme Court, *Huber v. Schriver*, 140 F.Supp.2d 265, 276 n.5 (E.D.N.Y.

2001) (citing *Francis S.*, 221 F.3d at 114) (other citation omitted), this Court

must determine whether the Third Department's decision which denied this

aspect of Lutes' appeal (*Lutes*, 285 A.D.2d at 739-41, 728 N.Y.S.2d at

555-556) is contrary to, or involved an unreasonable application of,

*Jackson* and its progeny.

> ii.   Contrary To, or Unreasonable Application of, Supreme
>        Court Precedent

A convicted defendant challenging the sufficiency of the evidence

supporting a conviction bears a "very heavy burden."  *Ponnapula v. Spitzer*,

297 F.3d 172, 179 (2d Cir. 2002) (citation omitted); *Fama*, 235 F.3d at 811;

*United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994).  The reviewing

court is required to consider the evidence in the light most favorable to the

prosecution, and draw all inferences in its favor.  *Jackson*, 443 U.S. at 319,

99 S.Ct. at 2789.  A petitioner is not entitled to habeas corpus relief on

such a ground unless he or she establishes that "no rational trier of fact

could find proof of guilt beyond a reasonable doubt based on the evidence

adduced at trial."  *Ponnapula*, 297 F.3d at 179 (citing *Jackson* and *Fama*).

Moreover, in determining sufficiency of the evidence, a federal court must

look to state law to ascertain the elements of the crime.  *See Jackson*, 443

U.S. at 324, 99 S.Ct. at 2792; *Ponnapula*, 297 F.3d at 179 (citing

*Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528

U.S. 1170, 120 S.Ct. 1196 (2000)).

In New York, a person is guilty of second degree manslaughter when

he or she "recklessly causes the death of another person."  N.Y. Penal Law

§ 125.15(1).  A person in turn acts recklessly with respect to a result or to a

circumstance:

> when he is aware of and consciously disregards a
> substantial and unjustifiable risk that such result will
> occur or that such circumstance exists.  The risk
> must be of such nature and degree that disregard
> thereof constitutes a gross deviation from the
> standard of conduct that a reasonable person would
> observe in the situation.  A person who creates
> such a risk but is unaware thereof solely by reason
> of voluntary intoxication also acts recklessly with
> respect thereto.

*See* N.Y. Penal Law § 15.05(3); *Knapp v. Leonardo*, 46 F.3d 170, 178-79

& n.6 (2d Cir.), *cert. denied*, 515 U.S. 1136, 115 S.Ct. 2566 (1995);

*Robinson v. Burge*, No. 02-CV- 357, 2005 WL 928632, at *5 (N.D.N.Y. Apr.

6, 2005) (Mordue, J.).

Lutes argues that the prosecution failed to prove that he consciously

disregarded the risk his conduct posed to Strickland on the evening of July

16, 1997.  *See* Petition, Ground A.  Petitioner further claims that the

evidence did not establish that he injured Strickland "in any way or that

[petitioner] acted in concert with co-defendants in a chain of events which

in fact led to the victims [*sic*] death."  *Id.*

The evidence at trial established that although Lutes initially

intervened in the assault on Strickland that had taken place at Lutes'

home, he was necessarily aware at that time that Strickland had sustained

serious injuries as a result of that altercation; petitioner himself testified at

trial that at that time he noticed that one of Strickland's teeth appeared to

have been knocked out, another tooth was broken, and blood was coming

out of Strickland's mouth and running down his neck and jaw.  Trial Tr. at

pp. 1837-38.  Despite Strickland's visible injuries, Lutes followed Strickland

to the home of petitioner's father, and when he arrived there petitioner was

observed punching Strickland "all over" with his fists.  Trial Tr. at pp. 967,

973.  Lutes also prevented his mother from entering the porch while

Strickland was being beaten, Trial Tr. at p. 974, and petitioner thereafter

struck Strickland in the head with a rake.  Trial Tr. at pp. 977-78.  When

Lutes learned that his mother had contacted law enforcement agents, he

encouraged the other men who had also been assaulting Strickland to "get

him out of here." Trial Tr. at p. 982.  The following day, Lutes candidly

admitted to his friend Richard Clifford that he had "beaten [Strickland] up

pretty bad" and thereafter "threw him in the pond."  Trial Tr. at p. 899.  This

evidence, particularly when viewed in combination with Lutes' incriminating

statement to the police that he, Dilmore and Steven Lutes threw Strickland

over a bridge into a pond after having assaulted Strickland (Trial Tr. at pp.

1967-68) is plainly sufficient to establish that Lutes consciously

disregarded a substantial and unjustifiable risk to Strickland's life on the

night of July 16, 1997.[16]  As the Appellate Division sagely noted, "the jury

---

[16]      In his unexhausted claim relating to the trial testimony of Rose Marie
Lutes, petitioner assets that "[t]he only evidence connecting me with any type of
aggression against the victim was the testimony of my mother."  Petition, Ground D.
Petitioner urges this Court to find that her trial testimony was "unbelievable as a
matter of law."  Petition at (unnumbered) p. 4.  The Court declines petitioner's
invitation.  Not only is this claim both unexhausted and procedurally defaulted for
the reasons discussed *ante*, but the Court further notes that federal habeas courts
are not free to reassess the credibility judgments of juries regarding trial testimony.
"When reviewing a petitioner's sufficiency of the evidence claim, a federal habeas
court must ... defer to the jury's resolution of any conflicts in the testimony and its
assessment of the witness' credibility."  *Feliz v. Conway*, 378 F.Supp.2d 425, 430
(S.D.N.Y. 2005) (citing *Jackson*) (other citation omitted); *see also Ferguson v.
Walker*, No. 00CIV1356, 2001 WL 869615, at *5 (S.D.N.Y. Aug. 2, 2001) (Peck,
M.J.), *adopted*, 2002 WL 31246533 (S.D.N.Y. Oct 7, 2002).  Thus, a claim that a
prosecution witness' testimony was not credible does not afford a basis for a
federal court to grant habeas relief.  *Feliz*, 378 F.Supp.2d at 430-31; *Ferguson*,
2001 WL 869615, at *5; *Bellezza v. Fischer*, No. 01-CV-1445, 2003 WL 21854749,
at *15 (E.D.N.Y. Aug. 6, 2003) (citations omitted); *Cottrel v. New York*, 259
F.Supp.2d 300, 308 (S.D.N.Y. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422,
434, 103 S.Ct. 843, 850-51 (1983)); *Fagon v. Bara*, 717 F.Supp. 976, 979 (E.D.N.Y.
1989) (habeas court "is not free to make credibility judgments about the testimony
presented at petitioner's trial or to weigh conflicting testimony") (citing *United States
v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)).

could have inferred that [Lutes] was aware of the risk of death created by the severe beating of Strickland followed by the callous act of throwing him off the bridge." *Lutes*, 285 A.D.2d at 741, 728 N.Y.S.2d at 556.

Petitioner also argues in this ground that he is entitled to habeas relief because his conviction was against the weight of the evidence. Petition, Ground A(1). However, weight of the evidence review is a product of New York state statute and therefore merely a state law issue. *See* CPL § 470.15; *Graham v. Ricks*, No. 9:02-CV-0303, 2004 WL 768579, at \*14 (N.D.N.Y. Apr. 7, 2004) (McCurn, S.J.) (citations omitted), *appeal dismissed Graham v. Ricks*, No. 04-2650-pr (2d Cir. Dec. 20, 2004); *Cardena v. Giambruno*, 2004 WL 239722, at \*4 (S.D.N.Y. Feb. 10, 2004) (citations omitted). Since habeas corpus review is not available for errors of state law, *Estelle v. McGuire*, 502 U.S. 62, 67-69, 112 S.Ct. 475, 479-80 (1991), no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial. *See Feliz*, 378 F.Supp.2d at 430 n.3 (citations omitted); *Bradley v. Johnson*, No. 99-CV-086C, 2005 WL 1577171, at \*4 (W.D.N.Y. July 1, 2005) (citations omitted); *Graham*, 2004 WL 768579, at \*14 (citations omitted); *Cardena*, 2004 WL 239722, at \*4 (citations omitted); *Glisson v. Mantello*, 287

F.Supp.2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases)); *Camacho v. McKinney*, No. 04 Civ.2226, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004) ("petitioner's first ground ... arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding"); *Brown v. Fischer*, No. 03 Civ. 9818, 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004) (Peck, M.J.) ("[i]t is well-settled that a weight of the evidence claim is not cognizable on federal habeas review") (citations omitted).

This Court therefore concludes that petitioner has not demonstrated that he is entitled to habeas relief on this claim, whether it is viewed as one challenging the sufficiency of the evidence adduced at trial or the weight of that evidence.  Therefore, Ground A(1) in the petition is denied on the merits.

<u>2.    Harsh and Excessive Sentence</u>

Lutes also argues that the sentence imposed on him as a result of his conviction – an indeterminate term of five to fifteen years imprisonment – is harsh and excessive.  *See* Petition, Ground A(2); Ground E. Specifically, he asserts that the sentence reflects a "gross injustice," and

fails to take into account that he had previously intervened in the fight involving Strickland at petitioner's home.  *See* Petition, Ground E.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F.Supp.2d 332, 343-44 (W.D.N.Y. 2005); *Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").

In New York, a conviction for second degree manslaughter is a class C felony.  *See* Record at p. R87; *People v. Knapp*, 113 A.D.2d 154, 167, 495 N.Y.S.2d 985, 994 (3d Dept. 1985).  The maximum term of imprisonment that may be imposed on an individual convicted of a Class C felony is fifteen years.  *See* N.Y. Penal L. § 70.00[2][c]; *Benloss v. Miller*, No. 04-CV-4780, 2005 WL 1311847, at *5 (E.D.N.Y. May 5, 2005) (citation omitted).  Thus, the sentence imposed on Lutes is clearly within the range permitted by state law.

_____Arguably, this ground could be construed as a claim that the sentence imposed constitutes a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271, 100 S.Ct. 1133, 1138 (1980).  However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272, 100 S.Ct. at 1138; *see Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 2701-02 (1991) (Eighth Amendment only forbids only sentences which are "grossly disproportionate" to the crime).  A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense.[17]  *Brumfield v. Stinson*, 297 F.Supp.2d 607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*, No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) [, *adopted*, *Thompson v. Lord*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)] (other citations omitted).

---

[17]    Petitioner has never contested, in the state courts or this proceeding, the validity of the statute which he was found guilty of violating or under which he was sentenced.

Lutes has not provided anything in support of his petition which indicates that the sentence imposed on him for his active participation in the death of Strickland is "grossly disproportionate" to that crime.  *E.g.*, *Harmelin*, 501 U.S. at 995, 111 S.Ct. at 2701-02.  This Court therefore finds no basis upon which it may properly find that Lutes is entitled to habeas relief due to the sentence he received following his conviction and accordingly denies this claim.

### 3.   Brady Claim

Lutes also alleges that the prosecution failed to fulfill its constitutional duty to provide him with all *Brady* material to which he was entitled.  Petition, Ground B.  Specifically, Lutes argues that the prosecution's "unfair delay" in providing Lutes with scientific reports prepared in conjunction with DNA evidence obtained in the criminal investigation below, coupled with the prosecution's failure to "turn over blood and hair samples," deprived Lutes of his right to a fair trial and necessitates the granting of his habeas application.  Petition, Ground C.

### i.   Clearly Established Supreme Court Precedent

In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution." *Brady*, 373

U.S. at 87, 83 S.Ct. at 1196-97.  To prove a *Brady* violation, a habeas

petitioner must establish that:  1) the evidence at issue was favorable to

the accused either because it was exculpatory or could have impeached a

prosecution witness; 2) the evidence was suppressed by the prosecution

either willfully or inadvertently; and 3) prejudice ensued from the

withholding.  *Moore v. Illinois*, 408 U.S. 786, 794-95, 92 S.Ct. 2562, 2568

(1972); *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948

(1999).

> ii.     <u>Contrary to, or Unreasonable Application of, Supreme
>         Court Precedent</u>

The Appellate Division rejected Lutes' *Brady* claims in its decision

denying Lutes' direct appeal.  *See Lutes*, 285 A.D.2d at 741-42, 728

N.Y.S.2d at 556-57.  Additionally, the rule announced in *Brady* is clearly

established for purposes of the AEDPA.  *See Nance v. Bennett*, No.

99-CV-6308, 2004 WL 1858139, at *5 (W.D.N.Y. Aug. 16, 2004); *Huber v.

Schriver*, 140 F.Supp.2d 265, 274 (E.D.N.Y. 2001); *Brooks v. Artuz*, No. 97

CIV. 3300, 2000 WL 1532918, at *5 (S.D.N.Y. Oct. 17, 2000) (citations

omitted).  This Court must therefore determine whether the Appellate

38

Division's decision rejecting this aspect of petitioner's appeal is contrary to, or represents an unreasonable application of, *Brady* and its progeny.

The facts alleged by Lutes in support of his *Brady* claim in his *pro se* petition do not clearly indicate the legal arguments petitioner is asserting in this action.  *See* Petition, Ground B.  However, in his direct appeal, Lutes claimed that his *Brady* rights were violated due to the prosecution's delay in providing Lutes with scientific reports relating to DNA analysis conducted on forensic evidence, and because of the prosecution's failure to provide the defense with physical evidence that could have been subjected to independent testing by the defense.  *See* App. Br. at pp. 18-24.

### a.   Delay in Testing and Disclosure of Reports

Lutes claimed on appeal that hair samples taken from the guardrail near the pond into which Strickland was thrown, as well as blood evidence found on a rake taken from the home of Lutes' father, were received by the New York State Police Laboratory in Albany, New York on July 29, 1997, but that testing on those samples did not commence until March 16, 1998. *See* App. Br. at p. 18 (citing Trial Tr. at pp. 1285, 1507).  With respect to the reports that were prepared following the testing of evidence secured by law enforcement officers, appellate counsel argued that a memorandum

39

summarizing the findings of Gary Veeder, a forensic scientist with the State Police Laboratory, was prepared on March 20, 1998 but that such report was not provided to defense counsel until April 27, 1998, two days before the commencement of Lutes' criminal trial.  *See* App. Br. at p. 18; Trial Tr. at p. 1514.  Additionally, appellate counsel noted that Richard Portzer, who performed DNA analysis on evidence obtained from a rake seized in conjunction with the criminal investigation, completed his report regarding his analysis on April 23, 1998, App. Br. at p. 18; Trial Tr. at p. 1514, however defense counsel was not provided with a copy of that report until April 27, 1998.  Trial Tr. at p. 1514.

Lutes argued on appeal, and appears to assert in this action, that the trial court  should have precluded the prosecution from offering any DNA evidence at his criminal trial because the prosecution's delay in both testing that evidence and providing to the defense copies of the above reports violated the terms of CPL § 240.20.[18]  *See* App. Br. at p. 19; *see also* Trial Tr. at pp. 1215-18.  In denying this portion of Lutes' appeal, the

---

[18]    At trial, defense counsel claimed that the prosecution's untimely production of the DNA reports prevented Lutes from retaining an expert to properly analyze those reports in conjunction with his defense to the murder charge.  Trial Tr. at pp. 1498-99.  The trial court denied Lutes' motion to preclude that evidence, Trial Tr. at p. 1307, as well as counsel's subsequent motion for a mistrial after that evidence was presented to the jury.  Trial Tr. at p. 1501.

Appellate Division found that even if the admission of the results of the DNA testing constituted error, "[t]he admission of the evidence was, at most, nonconstitutional error." *Lutes*, 285 A.D.2d at 741; 728 N.Y.S.2d at 556-57.  Therefore, this Court must determine whether this finding is either contrary to, or reflects an unreasonable application of, *Brady*.

Lutes' counsel also extensively questioned Portzer about his experience with DNA testing as well as the tests he performed on the evidence subsequently introduced at Lutes' trial.  Trial Tr. at pp. 1370-76, 1518-35.  Lutes did not establish in the state courts, and has not demonstrated in this proceeding, any prejudice to his defense attributable to the claimed delay in the testing of the evidence or the timing of the prosecution's disclosure of the expert reports.[19]  To the contrary, the record establishes that defense counsel conducted an extensive *voir dire* concerning Veeder's experience in examining hair and fiber evidence.  Trial Tr. at pp. 1263-75.  Moreover, counsel thoroughly cross-examined

---

[19]     This aspect of Lutes' petition also appears to overlook the well-settled legal precept which provides that "'as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner.'"  *Graham*, 2004 WL 768579, at *7 (quoting *In re United States* (*United States v. Coppa*), 267 F.3d 132, 142 (2d Cir. 2001)) (other citations omitted).  Thus, "'[t]here is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial.'"  *Graham*

this witness regarding the DNA analysis he performed on the evidence he

tested in conjunction with the criminal investigation.  Trial Tr. at pp. 1285-

95, 1312-30.

Additionally, it does not appear to this Court as though the trial court

improperly allowed the prosecution's witnesses to offer testimony regarding

the DNA testing that was performed on the forensic evidence.[20]  As the

Appellate Division properly noted:

> The test results related to certain events, such as
> the fact that Strickland was beaten and the fact that
> he was thrown over the guardrail of the bridge,
> which were established beyond a reasonable doubt
> by other evidence, including the results of the
> autopsy and defendant's written statement. In fact,
> defendant did not dispute the occurrence of these
> events but, instead, focused on his role in the
> events, an issue on which the DNA test results had
> no relevance.

*Lutes*, 285 A.D.2d at 741; 728 N.Y.S.2d at 556-57.

> b.   Failure to Provide Defense With Physical Evidence
> for Independent Testing

Lutes also argued both at trial and on appeal that the prosecution

wrongfully failed to provide the defense with Q-tips containing traces of

---

[20]   The trial court denied counsel's motion to strike the testimony of
Portzer and which requested a mistrial based upon the prosecution's alleged *Brady*
violations.  Trial Tr. at pp. 1488-1501.

blood taken from the rake allegedly used to assault Strickland, as well as

blood evidence found on the guardrail over which the victim was thrown.

*See* Trial Tr. at pp. 1486-93; App. Br. at pp. 19-21.  Lutes additionally

claimed on appeal that the trial court wrongfully denied his request to

preclude admission of DNA evidence at trial because defense counsel had

been misled by the prosecution into believing that no hair evidence could

be provided to the defense for testing because all such samples had been

consumed in the testing of that evidence by the prosecution.  App. Br. at p.

20; *see also* Trial Tr. at pp. 1299-1307.  Lutes argues that his defense was

prejudiced by the prosecution's failure to provide defense counsel with

blood and hair samples which he claims could have then been subjected to

DNA testing by the defense.  Petition, Ground B.  Petitioner further faults

the prosecution for failing to determine whether Lutes was the donor of any

of the blood or hair evidence found at the crime scene.  *Id.*

     The trial court found that the above did not constitute *Brady* material,

and that in any event Lutes failed to establish that the prosecution

possessed that evidence.  Trial Tr. at pp. 1494-97.  The Appellate Division

denied Lutes' appellate claim relating to this issue, finding that "assuming

that the hair and blood samples not consumed in the DNA tests constituted

43

*Brady* material, as defendant claims, there is no reasonable possibility that had the evidence been disclosed, the result would have been different." *Lutes*, 285 A.D.2d at 741-42, 728 N.Y.S.2d at 557 (internal quotation and citations omitted).

After carefully reviewing the state court record, this Court concurs with the state courts' determinations that Lutes has failed to establish any *Brady* violation regarding the above.  Initially, the Court notes that Lutes has not established that the forensic evidence that forms the basis of this claim was favorable to Lutes' defense because it was either exculpatory or could have impeached a prosecution witness.  Specifically, Lutes did not establish, in either the state courts or the present action, that DNA testing of any evidence obtained by law enforcement agents suggested that an individual who had not been indicted for the crime was present at either the home of Lutes' father or the bridge over which Strickland was thrown on the night he was killed.

Additionally, the suppression of exculpatory evidence does not amount to a constitutional violation unless the evidence is material, i.e., if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

44

*United States v. Bagley*, 473 U.S. 667, 681-82, 105 S.Ct. 3375, 3383-84 (1985); *Boyette*, 246 F.3d 76 at 91 (citing *Bagley*); *United States v. Carrington*, No. 02 CR. 897, 2002 WL 31496199, at *2 (S.D.N.Y. Nov. 7, 2002) ("[o]nly evidence that is material, as defined by the reasonable probability test set forth in *Bagley*, must be disclosed under *Brady*") (citations omitted).  In concluding that petitioner failed to establish prejudice concerning this claim, this Court endorses the Appellate Division's determination that in light of the substantial evidence discussed above which clearly demonstrated Lutes' legal culpability in Strickland's death, there is no reasonable probability that, had the requested evidence been disclosed to defense counsel, the result of Lutes' trial would have been different.  *See Lutes*, 285 A.D.2d at 741-42, 728 N.Y.S.2d at 557.

Since Lutes has failed to establish that the Appellate Division's decision denying his *Brady* claims is either contrary to, or an unreasonable application of, *Brady* and its progeny, this Court denies the *Brady* claims raised by petitioner in Ground B of his petition.

### 4.   Right to A Fair Trial

In his third ground for relief, Lutes argues that he was deprived of his right to a fair trial due to the admission of certain trial testimony provided by

New York State Police Investigator Roger A. Williams.  In support of this claim, petitioner notes that during that witness' testimony the following exchange occurred:

> The Prosecutor:  And during the course of [Investigator Williams'] interview [with] Mr. Lutes [did he make any] comments?
>
> Investigator Williams:  Yes.
>
> The Prosecutor:  Do you recall what type of questions were being asked of him at that time?
>
> Investigator Williams:  We were asking him about the party that he had at the house, who was there.
>
> The Prosecutor:  Was he responding to those questions?
>
> Investigator Williams:  Yes.
>                         * * * * *
>
> The Prosecutor:  Then do you recall what happened next?
>
> Investigator Williams:  Yes.  About 5:23, [New York State Police Investigator Peter J.] Kusminsky came back into the room.

46

| | |
|---|---|
| The Prosecutor: | Okay, what happened at that time? |
| Investigator Williams: | He read Mr. Lutes his *Miranda* rights. |
| The Prosecutor: | And how did he do that, if you recall? |
| Investigator Williams: | Yeah.  He had his ID in the back of his pocket, he pulls it out, it's got his card, and he started reading it to him. |
| The Prosecutor: | And after that what happened? |
| Investigator Williams: | Then Mr. Lutes started telling a different story than what he said. |
| Defense Counsel: | Objection, Your Honor.  I want to approach the bench. |

Trial Tr. at pp. 1575-77; *see also* Petition, Ground C.

Lutes claims that Investigator Williams' trial reference to allegedly inconsistent statements made by Lutes to the police violated the terms of a pretrial order issued by the County Court specifically prohibiting such testimony.  Petition, Ground C.  Petitioner argues that such testimony was false and "inflammatory," and severely prejudiced Lutes.  *Id.*  Petitioner

47

further claims that the trial court erred in denying defense counsel's

request for a mistrial following that testimony. *Id.*

### i.    Clearly Established Supreme Court Precedent

The right to a fair trial is guaranteed by the United States

Constitution. *United States v. Martinez-Salazar*, 528 U.S. 304, 313, 120

S.Ct. 774, 780 (2000); *Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S.Ct.

1793, 1797 (1997) ("the floor established by the Due Process Clause

clearly requires a "fair trial in a fair tribunal") (citing *Withrow v. Larkin*, 421

U.S. 35, 46, 95 S.Ct. 1456, 1464 (1975)); *see also* U.S. Const. amend. VI.

(in all criminal prosecutions, "the accused shall enjoy the right to a speedy

and public trial, by an impartial jury"). To establish a claim alleging the

denial of a fair trial, the party must demonstrate that "the absence of that

fairness fatally infected the trial; the acts complained of must be of such

quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S.

219, 236, 62 S.Ct. 280, 290 (1941); *see also United States v.*

*Alvarez-Machain*, 504 U.S. 655, 661-62, 112 S.Ct. 2188, 2192 (1992) (due

process of law mandates "a fair trial in accordance with constitutional

procedural safeguards") (citation omitted).

### ii.    Contrary to, or Unreasonable Application of, Supreme Court Precedent

48

In conjunction with this claim, this Court has reviewed the relevant portions of the state court transcript.  That review has satisfied the Court that petitioner has not demonstrated that his constitutional right to a fair trial was violated by the admission of Investigator Williams' testimony noted above.

Specifically, the Court notes that immediately after the disputed testimony was heard by the jury, the County Court heard arguments from counsel outside the presence of the jury and requested that defense counsel advise the court how the error could be corrected short of granting counsel's request for a mistrial.  Trial Tr. at pp. 1583-84.  Counsel then suggested that Investigator Williams be required to acknowledge that he misspoke with respect to the comments he attributed to Lutes.  Trial Tr. at p. 1584.  When the questioning of that witness resumed, the following testimony was heard by the jury:

> The Prosecutor: Investigator Williams, you were asked a question before we recessed, did you misspeak as to that question?
>
> Investigator Williams: Yes.
>
> The Prosecutor: Now with respect to this –

| | |
|---|---|
| Defense Counsel: | Judge – |
| The Prosecutor: | – this interview process – |
| The Court | You want the question pinpointed? |
| Defense Counsel: | Yes. |
| The Court | Yes.  After Investigator Kusminsky came into the room and read Mr. Lutes his rights, then what happened, and it was misspoken after that. |
| Defense Counsel: | Yes. |
| The Prosecutor: | Okay, do you remember that question? |
| The Court | What was the question? |
| The Prosecutor: | That question that I asked you what occurred, and you indicated that Investigator Kusminsky had come into the interview room and read Mr. Lutes his rights. |
| Investigator Williams: | Yes. |
| The Prosecutor: | Okay, and then I believe I asked you what happened after that, and it was that answer to that |

                              question at which you
                              misspoke?

                  Investigator
                  Williams:            Yes.

Trial Tr. at pp. 1586-87.  Thus, as the Appellate Division observed, the

error which occurred through the admission of Investigator Williams' earlier

testimony was "adequately addressed by County Court's prompt curative

measure."  *Lutes*, 285 A.D.2d at 742, 728 N.Y.S.2d at 557.

         Additionally, this Court further concludes that the County Court

properly denied defense counsel's motion for a mistrial relating to this

aspect of Investigator Willliams' testimony.  *See* Trial Tr. at pp. 1580-84.

To prevail on his motion for a mistrial, defense counsel was required to

establish the existence of "an error or legal defect in the proceedings ...

which [was] prejudicial to [Lutes] and deprive[d] him of a fair trial."  *See*

CPL § 280.10(1).   A habeas petitioner is entitled to habeas relief on claim

based upon a state court's failure to grant motion for mistrial "only where

[the] petitioner can show that the error deprived [him] of a *fundamentally*

*fair* trial."  *See Wilson v. Senkowski*, No. 02CIV.0231, 2003 WL 21031975,

at *12-13 (S.D.N.Y. May 7, 2003) (emphasis in original) (citing *Rosario v.*

*Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)) (internal quotations omitted);

                                      51

*see*, *e.g.*, *Arizona v. Washington*, 434 U.S. 497, 510-11, 98 S.Ct. 824, 833 (1978) (a  trial court's determination of whether to declare a mistrial is accorded "the highest degree of respect").

The admission of the above testimony, when viewed in conjunction with the measures taken by the County Court following receipt of that evidence, plainly did not justify the granting of defense counsel's application for a mistrial.  Specifically, although petitioner correctly notes that Investigator Williams offered improper testimony at Lutes' trial, he appears to overlook the fact that such witness clearly acknowledged on the record that the testimony on which the mistrial application was based was erroneous.  Trial Tr. at pp. 1586-87.  As the Appellate Division correctly determined, the measures taken by the County Court at petitioner's trial adequately addressed the issue created by this aspect of Investigator Williams' testimony.  *E.g.*, *Lutes*, 285 A.D.2d at 742, 728 N.Y.S.2d at 557.

Since Lutes has failed to establish that the Appellate Division's decision denying this aspect of his appeal is either contrary to, or an unreasonable application of, the above-referenced Supreme Court precedent, this Court denies the claims raised by Lutes in Ground C of his petition.

## IV.    **SUMMARY AND CONCLUSION**

In sum, the record before the Court firmly establishes that Lutes has never presented to the state courts numerous claims, discussed more fully above, on which he now seeks habeas intervention.  Since petitioner has not shown cause for his procedural default relating to these claims or that he is actually innocent of the crime of which he was convicted, these aspects of Lutes' petition are procedurally barred and are denied on this basis.  Applying the required, deferential standard of the AEDPA to the remaining aspects of his habeas application, this Court concludes that all such claims must be denied on the merits.  It is therefore hereby

**ORDERED**, that the petition in this matter is **DENIED** and **DISMISSED** in its entirety, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this order upon the parties by regular or electronic mail.

Dated:      September __9__, 2005
              Binghamton, NY

_____

Thomas J. McAvoy
Senior, U.S. District Judge